UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BURROUGHS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CDCR,<br><br>　　　　　Defendants. | No. 2:12-cv-2905 MCE AC P<br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's complaint, filed November 30, 2012, in which he raises a claim under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against the California Department of Corrections and Rehabilitation ("CDCR") for revoking his ADA status. This matter is before the court on defendant's motion to dismiss for failure to state a claim filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 17. For the reasons discussed herein, it is recommended that the motion to dismiss be granted.

I.  　Complaint

In his complaint, plaintiff states that he is legally blind, a diabetic, and has a permanent visual impairment that substantially limits one or more of his life activities. ECF No. 1 at 3. On February 2, 2011 plaintiff submitted a CDC 1824 form requesting a new pair of contact lenses to

1

correct his visual impairment because his current pair was worn out. Id. at 4. Attachments to the complaint indicate that plaintiff was seen by Donna R. Seabrooks, MD on March 10, 2011 based on reported "complaints of discomfort and trouble with his contact lens in the left eye since Monday." ECF No. 1 at 40. At this medical appointment, plaintiff's visual acuity was noted to be "20/25 in the right eye with his hard contact lens." Id. Without any correction, plaintiff is only able to "count fingers in the left eye." Id. The doctor recommended continuing plaintiff's glaucoma medicine and the use of his right contact lens until a new contact lens could be fitted for his left eye. Id. On April 15, 2011 plaintiff's ADA classification in the DPP/DPV[1] program was removed based on the findings that he "no longer qualifies for DPV status given that his central vision has been corrected to better than 20/200." ECF No. 1 at 26 (CDCR 128- C dated 4/15/2011). Although it is not entirely clear from his pleadings, plaintiff is apparently seeking renewed access to the DPP/ADA computer program in the law library and the Braille reading program at the prison which is only permitted for inmates in the DPP/DPV program.

Later in his complaint, plaintiff indicates that he does not currently have nor has he ever been considered disabled due solely to his diabetes. ECF No. 1 at 7. Furthermore, all of the attachments to the complaint concern plaintiff's disability status as it relates to his visual impairment. While plaintiff's diabetes does contribute to his vision problems as noted in the March 10, 2011 report from Dr. Seabrooks, plaintiff does not submit any verification of his disability status due solely to his diabetes. See ECF No. 1 at 40 (indicating that plaintiff suffers from "moderate non-proliferous diabetic retinopathy in both eyes").

II.     Motion to Dismiss

Defendant raises three arguments in its motion to dismiss. First, defendant asserts that since plaintiff's visual impairment can be corrected with hard contact lenses, he does not have a disability within the meaning of either the ADA or the RA. ECF No. 17 at 5-6. Next, defendant alleges that plaintiff has failed to state a claim upon which relief may be granted due to his failure to allege that he was denied the benefit of a program solely by reason of his disability. Id. at 6-7.

---

[1] "DPP" refers to the Disability Placement Program within CDCR. "DPV" is a category of disability based on blindness or vision impairment. See ECF No. 1 at 26.

1  Plaintiff's DPP/DVP program status was revoked because he was not disabled as that term is
2  defined. Id.  Lastly, defendant argues that the ADA does not provide a cause of action based on
3  inadequate medical treatment for a qualified disability. Id. at 7-8.  Therefore, according to
4  defendant, there is no ability to sue the CDCR for contact lenses or other medical devices to aid
5  one's disability. Id.  Based on these asserted defects in the complaint, defendant seeks dismissal
6  without leave to amend.

7  III.    Plaintiff's Opposition to the Motion to Dismiss

8  In his opposition, plaintiff further clarifies that at the time that he was removed from the
9  DPP/DPV program, he had only "one ill-fitted right [contact] lens." ECF No. 18 at 4.  He states
10 that he received new contact lenses for both eyes on May 16, 2011. Id.  In support of his
11 ADA/RA claim, plaintiff relies on the CDCR 128-C Chrono issued on April 15, 2011 which
12 states that "[i]f [the] patient is unable to wear contact lenses, he would be considered visually
13 impaired." Id.; see also ECF No. 1 at 26 (copy of chrono).

14 IV.    Standards Governing a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

15 In considering a motion to dismiss, the court must accept as true the allegations of the
16 complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),
17 construe the pleading in the light most favorable to the party opposing the motion and resolve all
18 doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.
19 869 (1969).  Moreover, pro se pleadings are held to a less stringent standard than those drafted by
20 lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).  A motion to dismiss for failure to state a
21 claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts
22 in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S.
23 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45–46 (1957)); see also Palmer v. Roosevelt
24 Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

25 IV.    Standards Governing ADA Claim

26 Title II of the ADA prohibits discrimination by public entities based on the availability of
27 services:  "Subject to the provisions of this subchapter, no qualified individual with a disability
28 shall, by reason of such disability, be excluded from participation in or be denied the benefits of

3

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Moreover, it is undisputed that Title II applies to state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 209 (1998) (stating that "the statute's language unmistakably includes State prisons and prisoners within its coverage").

In order to state an ADA claim, plaintiff must allege that: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007) (citations omitted). Effective January 1, 2009, the ADA provided in relevant part that:

> The term "disability" means, with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment;
>
> (C) or being regarded as having such an impairment (as described in paragraph (3)).
>
> (2) Major life activities
>
> (A) In general
>
> For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
>
> For purposes of paragraph (1)(C):
>
> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment

> with an actual or expected duration of 6 months or less.
>
> (4) Rules of construction regarding the definition of disability
>
> The definition of "disability" in paragraph (1) shall be construed in accordance with the following:
>
> ....
>
> (E) (i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as—
>
> (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;
>
> ....
>
> (ii) The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.
>
> *3 (iii) As used in this subparagraph-
>
> (I) the term "ordinary eyeglasses or contact lenses" means lenses that are intended to fully correct visual acuity or eliminate refractive error; and
>
> (II) the term "low-vision devices" means devices that magnify, enhance, or otherwise augment a visual image.

42 U.S.C. § 12102.

V.   Standards Governing RA Claim

To state a claim under the Rehabilitation Act[2], plaintiff must show that: "(1) (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). Title II of the ADA was modeled after the Rehabilitation Act itself. Id. Therefore, the elements of the ADA and RA claim are functionally the same. For that reason, the ADA and RA claims will be

---

[2] Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

5

1  addressed together for purposes of resolving defendant's motion to dismiss.

2  VI.     Analysis

3  The gravamen of plaintiff's ADA/RA claim is that he was improperly removed from the DPP/DPV program based on correction of his vision that was obtained through the use of contact lenses. However, a vision impairment that can be corrected by ordinary contact lenses does not render a person "disabled" within the meaning of the ADA. See 42 U.S.C. § 12102 (stating that the corrective effect of eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity). To continue to be disabled, plaintiff would have to demonstrate that even with the use of his contact lenses a major life activity is substantially limited. Plaintiff does not alleges that he is unable to continue to wear his contact lenses or that any of the daily activities identified in the ADA are impacted. For this reason, he has failed to state a cognizable claim for relief under the first prong of the ADA and this claim must be dismissed.

Nor does plaintiff state an ADA/RA claim based on his diabetes. The complaint is devoid of any allegations or documentation indicating that his diabetes alone affects a major life activity. Accordingly, plaintiff fails to state a claim for relief under the ADA/RA for his diabetes.

Dismissal without leave to amend is only proper where it is clear that a claim "could not be saved by any amendment." Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). Here, it is clear that plaintiff's ADA claim could not be saved by amendment because his vision impairment is not a "disability" within the meaning of the ADA. Accordingly, this claim should be dismissed without leave to amend.[3]

Furthermore, plaintiff fails to state a claim for relief based on the CDCR's failure to provide him with proper prescription contact lenses between April and May 2011. The ADA implementing regulations expressly do "not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as

---

[3] Based on this recommendation, the court does not find it necessary to discuss the second argument presented by defendant's motion to dismiss, namely that plaintiff has also failed to allege that he was denied the benefit of a program solely by reason of his disability. See ECF No. 17 at 6-7.

1  prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal
2  nature including assistance in eating, toileting, or dressing." 28 CFR § 35.135.[4]

3     For these reasons IT IS HEREBY RECOMMENDED that:
4     1. Defendant's motion to dismiss be granted.
5     2. Plaintiff's complaint alleging ADA and RA violations be dismissed without leave to
6  amend.

7     These findings and recommendations are submitted to the United States District Judge
8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days
9  after being served with these findings and recommendations, any party may file written
10 objections with the court and serve a copy on all parties.  Such a document should be captioned
11 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
12 objections shall be served and filed within fourteen days after service of the objections.  The
13 parties are advised that failure to file objections within the specified time may waive the right to
14 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
15 DATED: January 3, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[4] This regulation was promulgated by the U.S. Attorney General, the official charged with promulgating implementing regulations regarding ADA implementation by public entities.  42 U.S.C. § 12134(a).  Accordingly, it is entitled to substantial deference.  Blum v. Bacon, 457 U.S. 132, 141 (1982) ("the interpretation of an agency charged with the administration of a statute is entitled to substantial deference").